UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

SHARN CRAWFORD,

    Plaintiff,

v.

CORRECTIONAL MEDICAL SERVICES, (CMS), DR. JIM KAUL, JOAN FABIAN, and DR. DAN DUPRE, M.D.,

    Defendants.

Civil No. 08-6190 (JNE/AJB)

**REPORT AND RECOMMENDATION**

---

## I. INTRODUCTION

Plaintiff, a Minnesota prison inmate, commenced this action by filing a civil complaint, seeking relief under the Americans with Disabilities Act, ("ADA"), and under 42 U.S.C. § 1983. He later filed an amended complaint, (Docket No. 13), which sets forth his current explication of his claims.

Two of the named Defendants, Dr. Jim Kaul, (hereafter Dr. Kaul), and Minnesota Commissioner of Corrections Joan Fabian, (hereafter Commissioner Fabian), have filed a motion seeking to dismiss Plaintiff's claims against them, pursuant to Fed. R. Civ. P. 12(b)(6). (Docket Nos. 30-32.) Another Defendant, Dr. Brad Dupre, M.D.,[1] (hereafter Dr. Dupre), has filed a separate motion for summary judgment, pursuant to Fed. R. Civ. P. 56. (Docket Nos. 37-42.)[2] Plaintiff has filed a brief response to Defendants' respective motions,

---

[1] Although this Defendant is identified as Dr. <u>Dan</u> Dupre in the caption of Plaintiff's amended complaint, it appears that his name actually is <u>Brad</u> Dupre.

[2] The fourth named Defendant, Correctional Medical Services, (CMS), has not appeared in this action, presumably because it has not received service of process.

(Docket No. 44), as well as several appendices and exhibits.

The matter has been referred to this Court for a report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court will recommend that Defendants' pending motions be granted, and that this action be dismissed.

## II. FACTUAL BACKGROUND

Plaintiff is currently confined at the Minnesota Correctional Facility in Faribault, Minnesota. According to a website maintained by the Minnesota Department of Corrections, (www.corr.state.mn.us), Plaintiff entered prison on January 31, 2008, after being convicted of "First Degree DWI." His projected release date is October 7, 2009.

This case stems from a series of events that occurred in 2008, while Plaintiff was confined at the Minnesota Correctional Facility in Lino Lakes, Minnesota, ("MCF-LL"). Shortly after Plaintiff arrived at the MCF-LL, he was examined by Dr. Dupre, a prison psychiatrist. In a "psychiatric assessment" dated April 24, 2008, Dr. Dupre noted that Plaintiff was suffering from depression and "substance induced anxiety disorder," for which he was taking two medications – Celexa, (also known as Citalopram), and BuSpar, (also known as Buspirone). (Defendant Dr. Brad Dupre's Motion for Summary Judgment Exhibits [Docket No. 42], [hereafter referred to as "Dupre Exhibits"],[3] Exhibit 6.) Before Dr. Dupre's examination and assessment in April 2008, Plaintiff had been taking 40 milligrams of Celexa daily, and 10 milligrams of Buspar "b.i.d.", (i.e., twice a day). Dr. Dupre recommended that Plaintiff should continue that regimen. (Id.)

---

[3] Dupre Exhibits 5-10 have been filed under seal.

Dr. Dupre also noted that Plaintiff had been receiving Social Security Disability benefits since 1995. (Dupre Exhibit 6.) Plaintiff has identified his disability as "mental retardation." (Amended Complaint, [Docket No. 13], "Statement of Claim," p. 5.) As explained by Plaintiff, "[f]or me learning is a problem." (Id.)

While Plaintiff was at MCF-LL he participated in a substance abuse treatment program known as "TRIAD." There apparently are different variations or phases of the TRIAD program, and Plaintiff was assigned to the "T-400" TRIAD program. However, Plaintiff found that he "struggled with the material" in that program, and he asked to be re-assigned to the "T-300" program, so he could be "treated and housed" with offenders "with mental disabilities similar to" his own. (Amended Complaint, "Statement of Claim," p. 6; see also Dupre Exhibit 11.) That request apparently was not granted.[4] On May 23, 2008, Plaintiff was placed on a TRIAD "probation contract," because of "problems in the program." (Dupre Exhibit 12.)

On June 6, 2008, Plaintiff met again with Dr. Dupre. According to a psychiatric assessment report prepared at that time, Plaintiff was "having some trouble in the [TRIAD] programming," and he was "feeling picked on in the group." (Dupre Exhibit 7.) Plaintiff purportedly did "not like the program," and had been "voted most negative by his peers." (Id.) Dr. Dupre's report indicates that "[w]e agreed to raise BuSpar from 10 b.i.d. to 20 mg b.i.d.," and "[c]ontinue Celexa 40 mg daily." (Id.) Plaintiff's "Medication Administration

---

[4] The current record does not provide a clear explanation of the difference between T-400 and T-300, or why Plaintiff thought he would have more success in T-300. Nor does the record show why Plaintiff was not transferred to T-300 as he requested.

3

Record" confirms that this prescribed regimen remained in effect during the summer of 2008. (Dupre Exhibit 5.)

Although Dr. Dupre made no change in Plaintiff's Celexa prescription, and increased his BuSpar prescription, Plaintiff continued to have trouble with the TRIAD program. On June 24, 2008, his probation was extended for another month. (Dupre Exhibit 12.)

During Plaintiff's next meeting with Dr. Dupre, on August 1, 2008, he reported that he was doing "much better in his program;" that he was "not bothered by things as much;" and he felt "less angry and irritable." (Dupre Exhibit 8.) Plaintiff also reported that three weeks earlier he had "started taking 10 mg of BuSpar daily instead of 40," and that he had "not had any recurrence of depressive or anxiety symptoms at the lesser dose." (Id.) Based on that report, Dr. Dupre reduced Plaintiff's BuSpar prescription from 40 mg per day to 10 mg per day. (Id.) Plaintiff's prescription for Celexa remained unchanged at 40 mg per day. (Id; see also Dupre Exhibit 5.)

Even though Dr. Dupre continued Plaintiff's prescription for Celexa, Plaintiff stopped taking that medication sometime in July or August of 2008. (Dupre Exhibit 9.) At about the same time, Plaintiff began to experience more problems with his TRIAD program. He alleges that "[i]t became increasingly difficult to handle the treatment regimen that constantly came up with ways to demean me (would have me stand in front of 75 peers, while they tell you that you're a bad person)" and he "became very depressed." (Amended complaint, "Statement of Claim," p. 6.) In early September 2008, Plaintiff was "kicked out" of the TRIAD program, and he also was informed that his prison term would be extended by 30 days. (Id.) Plaintiff promptly appealed his removal from the TRIAD program, but the TRIAD Director, Dr. Kaul, denied Plaintiff's appeal, and upheld his "termination from

4

TRIAD." (Dupre Exhibit 12.)

On the day that Dr. Kaul upheld Plaintiff's removal from TRIAD, September 12, 2008, Plaintiff was seen at the prison health services department. (Dupre Exhibit 9.) He reported that he was no longer taking the Celexa that had been prescribed by Dr. Dupre. According to an entry in Plaintiff's prison medical record, "[h]e hasn't taken his Celexa for over 2 months." (Id.; emphasis in the original record.) Plaintiff was "educated" about "consistently taking his BuSpar and Celexa." (Id.) A week later, Dr. Dupre reiterated that point, by entering a note on Plaintiff's medical record, indicating that he should "restart Celexa." (Id.)[5]

In October and November 2008, Plaintiff submitted a series of administrative grievances, seeking reinstatement to the TRIAD program, and avoidance of the 30-day extension of his sentence. (Dupre Exhibits 14-18.) Plaintiff contended that he had failed at the program because his "medication was dractilly [sic] reduced from 60 mg to 10 mg." (Dupre Exhibit 14.) All of Plaintiff's administrative appeals were rejected. A final response

---

[5] In December 2008, (after Plaintiff commenced the present lawsuit), Dr. Dupre barred Plaintiff from keeping his medications in his own possession. Instead, he was required to obtain his medications from the prison staff, so they could monitor whether he was taking them as prescribed. (Dupre Exhibits 10 and 19.) In a note dated December 10, 2009, Dr. Dupre explained to Plaintiff that –

> "We spent a great deal of time discussing this [change in medication procedures]. You changed how you were taking the meds on your own. Then you blamed me for changing your meds to the new way you were choosing to take them. And then you blamed me for causing your mood to worsen. You will now be required to take them at the pill window to ensure you get the correct amount each day."

(Dupre Exhibit 19.)

from the Warden at MFC-LL explained that:

> "The facts in your case remain clear. You were terminated from the program because of your behavior and problems working the program, and not because of any problems with your ability to read or write or comprehend the material in the program. The team assessments show you failing to meet basic program expectations throughout the time you were in the program, and not just at the end (you failed on four of the five monthly assessments). These problems cannot be explained away by disabilities, mental health issues, or changes in medication."

(Dupre Exhibit 18.)

### III. PLAINTIFF'S CLAIMS

Plaintiff is now attempting to sue both Dr. Dupre and Dr. Kaul. He also attempting to sue Commissioner Fabian, and an entity identified as Correctional Medical Services, ("CMS"), which has not appeared in this action, (see p. 2, n. 2, supra).

Plaintiff is suing Dr. Dupre for medical malpractice, and for violating Plaintiff's constitutional rights under the Eighth Amendment. These claims are based on Plaintiff's allegation that –

> "Although I struggled due to my mental condition I was able to do fairly well [in the TRIAD program] until Dr. Brad Dupre, a psychiatrist, employed by Correctional Medical Services (CMS) decided to take me completely off the medication Citalopram [i.e., Celexa] which is an antidepressant (mood elevator) used to treat depression. I was cut off this medication cold turkey. This stopage [sic] affected my behavior pattern, and the way I interacted with other people."

(Amended complaint, "Statement of Claim," p. 6.)

Plaintiff has further alleged that –

> "The other medication I was taking, BuSpar 5 tablet, the dosage was lowered from 60 mg to 10 mg. This brought about my problems and eventual expulsion from the treatment program. That drastic reduction caused me to experience nervousness, anxiety and tension, the very symptoms that the medication had kept under control.

6

>     When the Buspirone (BuSpar 5 mg) was reduced from 60 mg to 10
> mg it was just as bad as being stop[ped] cold turkey from the Citalopram....
>     Due to needed medication being cut-off and withheld I experienced
> nervousness, anxiety, tension and massive bouts of depression."

(Id., pp. 6-7.)

Plaintiff is suing CMS "for Negligence and Malpractice for the doctors' unsound medical practice under the well settled supervisor superior/respondent doctrine where this legal entity is responsible for the training and supervision of its doctors." (Amended Complaint, "Relief," p. 10.) In other words, Plaintiff is attempting to hold CMS vicariously liable for the alleged negligence of Dr. Dupre, and he also attempting to sue CMS for negligently failing to properly train and supervise Dr. Dupre.

Dr. Kaul is being sued, in both his individual capacity and his official capacity, "for his role in having the Plaintiff terminated from the treatment program." (Id., pp. 10-11.) Plaintiff claims that Dr. Kaul was aware of his mental disabilities, and knew that he needed his medications, (Celexa and BuSpar), in order to succeed in the TRIAD program. According to the amended complaint, "Dr Kaul was warned beforehand and afterwards that Plaintiff could not handle the rigors of treatment participation after the tampering with his medication by Dr. Dupre." (Id., p. 11.)

Plaintiff's claims against Dr. Kaul are brought under Title II of the ADA. He claims that he was denied the benefits of a state-operated service, (TRIAD), because Dr. Kaul failed to accommodate his disabilities. Plaintiff contends that Dr. Kaul should have made sure that (i) Plaintiff was placed in a treatment program suitable for individuals with cognitive impairments and mental health issues, and (ii) Plaintiff was given the medications he needed to succeed in the TRIAD program. As summarized by Plaintiff:

7

> "Dr. Kaul is being sued in the amount of over $50,000 dollars [sic] for his, in Plaintiff's opinion, discriminatory action in disregarding the Americans with Disabilities Act that provides protection to inmates with mental disabilities."

(Id.)

Plaintiff's claim against Commissioner Fabian, repeated verbatim and in its entirety, is as follows:

> "Joan Fabian, Commissioner of Corrections is being sued in her official capacity for the return of the 30 days extended incarceration time. The Plaintiff is entitled to sue the Commissioner for this injunctive relief due to Dr. Dupre['s] error in tampering with Plaintiff's medication resulting in his below average ability to successfully keep pace with the treatment program's curricular. And her failure to train TRIAD staff to accommodate mentally ill prisoners."

(Id.)

The Court finds that all of Plaintiff's claims against all of the named Defendants must be dismissed, for the reasons discussed below.

## IV. DR. DUPRE'S SUMMARY JUDGMENT MOTION

### A. Standard Of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate if the materials submitted in support of the motion "show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The standards for considering a Motion for Summary Judgment have their foundation in the provisions of Rule 56 of the Federal Rules of Civil Procedure, as interpreted in a trilogy of cases decided by the Supreme Court in 1986. In one of those cases, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986), the Supreme Court described the importance of the summary judgment procedure:

> "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' . . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis."

On a Motion for Summary Judgment, the moving party has the initial burden of establishing the "material facts" and demonstrating that there is not a "genuine" dispute as to whether those material facts are true. Fed. R. Civ. P. 56(c). To defeat the motion, the opposing party must then establish that there is a "genuine" issue as to material facts.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Fed. R. Civ. P. 56(e). If a motion for summary judgment is properly supported by affidavits or other evidence, the nonmoving party must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. Id. at 587; Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc., 824 F.2d 582, 585 (8th Cir. 1987), cert. denied, 484 U.S. 1010 (1988). Although the evidence is examined in the light most favorable to the non-moving party, the non-moving party may not rely on conclusory allegations or denials. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Lambert v. City of Dumas, 187 F.3d 931, 934-35 (8th Cir. 1999).

The moving party is entitled to summary judgment when the non-movant fails to establish the existence of an essential element of a claim on which that party has the burden of proof at trial. Celotex Corp., 477 U.S. at 322. No genuine issue of material fact

exists absent such foundation because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587. The Court considers the motion for summary judgment based upon the material presented in connection with the motion. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. The Court's inquiry should be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

The Court is mindful that pro se pleadings should be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); White v. Bond, 720 F.2d 1002, 1003 (8th Cir. 1983). Therefore, pro se pleadings are held to less stringent standards when challenged by motions to dismiss or for summary judgment. Haines, 404 U.S. at 520; Horsey v. Asher, 741 F.2d 209, 211 n.3 (8th Cir. 1984). Nonetheless, a pro se plaintiff's claim cannot survive a motion for summary judgment unless, in some form, he can fairly be said to have set forth specific facts demonstrating that there is a genuine issue for trial. Miller v. Solem, 728 F.2d 1020, 1023, (8th Cir.), cert. denied, 469 U.S. 841 (1984); Quam v. Minnehaha County Jail, 821 F.2d 522 (8th Cir. 1987).

B. <u>Dr. Dupre Is Entitled To Summary Judgment</u>

Plaintiff has presented two claims against Dr. Dupre – (1) medical malpractice, a common law negligence claim, and (2) deliberate indifference to medical needs, a civil rights claim brought under the Eighth Amendment and 42 U.S.C. § 1983. Both of these claims are based on Plaintiff's allegation that Dr. Dupre suddenly and arbitrarily stopped Plaintiff's prescription for Celexa, and drastically reduced the dosage of Plaintiff's BuSpar prescription for no legitimate reason. Plaintiff claims that because Dr. Dupre cut him off his medications "cold turkey" he suffered mental health problems that culminated in his removal from the TRIAD program. Plaintiff is seeking damages from Dr. Dupre for harming his mental health, and causing him to be removed from the TRIAD program.

All of Plaintiff's claims against Dr. Dupre must be dismissed on summary judgment, because they all hinge on a single factual allegation that is plainly unsustainable – namely, that Dr. Dupre arbitrarily cut off the medications that Plaintiff needed to successfully complete the TRIAD program. The conclusory allegations against Dr. Dupre presented in Plaintiff's amended complaint are clearly disproved by Dr. Dupre's evidentiary submissions. The evidentiary materials in this case – most notably Plaintiff's medication reports, (Dupre Exhibit 5), Dr. Dupre's psychiatric assessments, (Dupre Exhibits 6, 7, 8 and 10), and Plaintiff's prison medical record, (Dupre Exhibit 9) – show that Dr. Dupre did <u>not</u> arbitrarily curtail Plaintiff's access to his medications.

The evidence shows that when Dr. Dupre first met Plaintiff, in April 2008, Plaintiff was taking 40 mg of Celexa per day. (Dupre Exhibits 5 and 6.) <u>Dr. Dupre never changed that prescription during the entire period of time at issue in this case</u>, i.e., through the rest of 2008. (Dupre Exhibits 5-10.) The record shows that Dr. Dupre did <u>not</u> cut off Plaintiff's

11

access to that medication. To the contrary, the evidence affirmatively demonstrates that Dr. Dupre continued Plaintiff's prescription for Celexa, <u>always at the same 40 mg per day dosage</u>, and he recommended that Plaintiff should continue taking it.

Sometime in July 2008, Plaintiff stopped taking Celexa – even though Dr. Dupre had made no change in Plaintiff's prescription. (Dupre Exhibits 5, 9.) When a prison nurse learned that Plaintiff had stopped taking his Celexa, despite Dr. Dupre's continuing prescription for that medication, she "educated him on consistently taking" his medications. (Dupre Exhibit 9.)

The evidentiary record also disproves Plaintiff's allegations regarding his prescription for BuSpar. Plaintiff alleges that Dr. Dupre arbitrarily reduced his BuSpar dosage from 60 mg per day to 10 mg per day, which was "just as bad as being stop[ped] cold turkey from [Celexa]." (Amended complaint, "Statement of Claim," p. 7.) However, the record shows that when Dr. Dupre first saw Plaintiff in April 2008, his BuSpar prescription was 20 mg per day – not 60 mg per day. (Dupre Exhibits 5, 6.) Dr. Dupre continued the 20 mg per day dosage until June 2008, at which time he <u>increased</u> the prescribed dosage to 40 mg per day. (Dupre Exhibits 5, 7.) In August 2008, Plaintiff informed Dr. Dupre that he had decided, on his own, to start taking only 10 mg of BuSpar per day, because he thought the higher dosage was counterproductive, and he had "not had any recurrence of depressive or anxiety symptoms at the lesser dose." (Dupre Exhibit 8.) Based on that information furnished by Plaintiff, Dr. Dupre reduced the BuSpar prescription to 10 mg per day – the dosage that Plaintiff himself had found to be most effective. (<u>Id</u>.)

In sum, all of the evidence shows that Dr. Dupre did <u>not</u> cut Plaintiff off from the

medications that he needed. Plaintiff's prescription for Celexa never varied during the entire period of time at issue in this case. Dr. Dupre maintained the Celexa prescription at 40 mg per day at all times. Furthermore, Dr. Dupre did not arbitrarily reduce Plaintiff's BuSpar from 60 mg per day to 10 mg per day. The dosage was reduced from 40 mg per day to 10 mg per day, only after Plaintiff told Dr. Dupre that he had – on his own – started taking only 10 mg per day, and found that to be the most effective dosage.

Plaintiff has not submitted any evidence to contradict Dr. Dupre's evidentiary submissions. Thus, the Court finds that there is no genuine issue of material fact with regard to Plaintiff's claims against Dr. Dupre. Based on the unrefuted evidence of record, no rational trier of fact could conclude that Dr. Dupre arbitrarily curtailed Plaintiff's access to his medications in the manner alleged in the amended complaint. Because the elemental factual premise of all of Plaintiff's claims against Dr. Dupre is unsustainable, Dr. Dupre is entitled to summary judgment.

## V. DR. KAUL'S AND COMMISSIONER FABIAN'S MOTION TO DISMISS

A. Standard of Review

A complaint challenged by a motion to dismiss pursuant to Rule 12(b)(6) need not contain detailed factual allegations to survive, but must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in order to avoid dismissal. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Factual allegations must be sufficient "to raise a right to relief above the speculative level ... on the assumption that all allegations in the complaint are true." Id. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of]

a legally cognizable right of action").

All reasonable inferences must be drawn in the non-movant's favor. Hafley v. Lohman, 90 F.3d 264, 267 (8th Cir.1996), cert. denied, 519 U.S. 1149 (1997). Furthermore, a complaint should not be dismissed simply because a court doubts that a plaintiff will be able to prove all of the factual allegations in the complaint. Twombly, 550 U.S. at 555. Thus, a well-pled complaint will survive a motion to dismiss even where the likelihood of recovery appears remote. Id. However, a complaint must contain sufficient facts to state a claim that is not only conceivable, but plausible. Id. at 570.

A court may also grant a motion to dismiss on the basis of a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 326 (1989). "[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations'... a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." Id. at 327.

B. Plaintiff's Claims Against Dr. Kaul

As indicated above, Plaintiff's claims against Dr. Kaul are based on Title II of the ADA.[6] Plaintiff alleges that Dr. Kaul violated the ADA by barring him from a state-

---

[6] "Title II of the ADA states that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' 42 U.S.C. § 12132. '[R]ecreational activities, medical services, and educational and vocational programs" at state prisons are benefits within the meaning of Title II, Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210... (1998) (internal quotations omitted), and 'qualified individual[s] with a disability' are entitled to 'meaningful access' to such benefits. Randolph v. Rodgers, 170 F.3d 850, 857-58 (8th Cir.1999).

14

sponsored program, (TRIAD), because of his mental disabilities, and without attempting to accommodate those disabilities. Plaintiff is attempting to sue Dr. Kaul in both his individual capacity and his official capacity.

However, Plaintiff cannot bring a Title II ADA claim against Dr. Kaul in his individual capacity, because "Title II provides disabled individuals redress for discrimination by a 'public entity' [and] [t]hat term, as it is defined within the statute, does not include individuals." Alsbrook v. City of Maumelle, 184 F.3d 999, 1005, n.8 (8th Cir. 1999), quoting 42 U.S.C. § 12132 (emphasis added). See also Roblero-Barrios v. Ludeman, Civil No. 07-4101 (MJD/FLN), (D.Minn. 2008), 2008 WL 4838726 at * 5 ("the public-entity limitation precludes ADA claims against state employees in their individual capacities").

Plaintiff's attempt to sue Dr. Kaul in his official capacity is also unavailing. The Supreme Court has explained that –

> "official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' [Kentucky v. Graham,

---

A 'qualified individual with a disability' is an individual 'who, with or without reasonable modifications to rules, policies, or practices, ... or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.' 42 U.S.C. § 12131(2).... While a public entity is required to make reasonable accommodations where necessary to give 'meaningful access' to programs or benefits, Randolph, 170 F.3d at 858, the entity need not make available 'auxiliary aids and services' if it can show that to do so would be "unduly burdensome. Id. at 858-59; Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir.1998); see 28 C.F.R. § 35.150(a)(3)."

Mason v. Correctional Medical Services, Inc., 559 F.3d 880, 886 (8th Cir. 2009).

> 473 U.S. 159, 165 (1985)], (quoting <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 690, n. 55,... (1978)). Suits against state officials in their official capacity therefore should be treated as suits against the State. 473 U.S., at 166.... <u>Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation of federal law.'</u> <u>Graham</u>, supra, at 166,... (quoting <u>Monell</u>, supra, 436 U.S., at 694...).

<u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991) (emphasis added). As further explained by the Eighth Circuit Court of Appeals: "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; <u>they require proof that a policy or custom of the entity violated the plaintiff's rights</u>...." <u>Gorman v. Bartch</u>, 152 F.3d 907, 914 (8th Cir. 1998) (emphasis added). Thus, in order to bring an actionable ADA claim against Dr. Kaul in his official capacity, Plaintiff would have to plead, (and ultimately prove), that Dr. Kaul's allegedly wrongful acts or omissions were attributable to some policy or custom of the State of Minnesota.

The Court finds that Plaintiff has not pleaded an actionable ADA claim against Dr. Kaul in his official capacity, because there are no allegations suggesting that any of Dr. Kaul's allegedly wrongful acts or omissions were attributable to any policy or custom of the State of Minnesota. The amended complaint does not identify any specific State policy or custom that prompted Dr. Kaul to treat Plaintiff in the manner he has alleged. To the contrary, it appears that Dr. Kaul is being sued solely because of his own <u>personal</u> response to the particular facts and circumstances presented in Plaintiff's case. Because Plaintiff has not alleged that Dr. Kaul violated the ADA by executing some specified State policy or custom, the amended complaint fails to state an actionable official capacity claim against Dr. Kaul.

    C. <u>Plaintiff's Claims Against Commissioner Fabian</u>

16

Plaintiff has explicitly pleaded that he is suing Commissioner Fabian in her official capacity to obtain an order that would vacate the 30-day extension of his prison term. (See p. 8, supra.) The legal basis for Plaintiff's claim against Commissioner Fabian is not clearly identified. That does not matter, however, because the relief Plaintiff is seeking in his claim against Commissioner Fabian – i.e., a 30-day reduction of his prison term – is not available in this action, regardless of how Plaintiff's claim is framed and presented.

Plaintiff's claim against Commissioner Fabian is barred under the principles discussed by the Supreme Court in Preiser v. Rodriguez, 411 U.S. 475 (1973) and Heck v. Humphrey, 512 U.S. 477 (1994). In both of those cases, the Court held that a state prisoner cannot challenge the fact or duration of his confinement in a federal civil rights action. Habeas corpus is the exclusive federal remedy for a prisoner who seeks an expedited release from custody. Heck, 512 U.S. at 481, citing Preiser, 411 U.S. at 488-490. See also, Portley-El v. Brill, 288 F.3d 1063, 1066 (8th Cir. 2002) ("the Court held in Preiser that habeas corpus, not § 1983, is the exclusive federal remedy when a state prisoner seeks restoration of good time credits taken away by a prison disciplinary proceeding").

Here, it is readily apparent that Plaintiff is challenging the projected duration of his confinement by the State of Minnesota. Indeed, he is expressly asking this Court to enter an order that would shorten his sentence by 30 days. The Supreme Court has held, however, that habeas corpus is the sole federal remedy by which Plaintiff can secure an expedited release from state custody.

According to Heck, Plaintiff cannot maintain a civil rights action that directly or

indirectly challenges the fact or duration of his confinement, until after he has successfully challenged his confinement in an appropriate forum, i.e., in a state or federal habeas corpus action. 512 U.S. at 486-87. Because Plaintiff has not satisfied this precondition, his current attempt to sue Commissioner Fabian for the restoration of his original projected release date is barred by Heck.[7]

## VI. CONCLUSION

For the reasons discussed above, the Court will recommend that Dr. Dupre's motion for summary judgment be granted, and that Dr. Kaul's and Commissioner Fabian's motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), also be granted.

The sole remaining Defendant in this case, CMS, has not appeared in this action, because service of process never was effected on CMS. Plaintiff must be held responsible for the lack of service, because he requested and submitted marshal service forms for only three of the Defendants – Dr. Dupre, Dr. Kaul and Commissioner Fabian. (See Correspondence from Plaintiff received December 5, 2008; [Docket No. 6].) The 120-day deadline for effecting service of process, (see Fed. R. Civ. P. 4(m)), expired long ago, and Plaintiff has made no effort to explain why CMS has not been served. The Court will therefore recommend that this action be dismissed without prejudice as to CMS, for lack of timely service of process, unless Plaintiff files an objection to this Report and

---

[7] Under different circumstances, Plaintiff's current pleading might be construed as an application for federal habeas corpus relief and entertained as such. That cannot be done in this case, however, because there is no indication that Plaintiff has exhausted his state court remedies, as required by 28 U.S.C. § 2254(b)(1)(A). See O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) ("the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition").

Recommendation which shows good cause to extend the deadline for serving CMS, as required by Fed. R. Civ. P. 4(m).[8]

Finally, after all of the briefing in this case was completed, Plaintiff filed a last anomalous motion, (Docket No. 49), which was accompanied by a collection of exhibits, (Docket No. 50). Although the Clerk's Office has characterized Plaintiff's motion as a request to amend his complaint, the Court understands and construes it to be a request to present additional documentary evidence in support of Plaintiff's claims. As so construed, the motion should be granted, because the exhibits submitted with Plaintiff's motion have already been filed, and they have been fully considered by the Court.

## VII. RECOMMENDATION

Based upon the above, and upon all of the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1. Defendant Dr. Brad Dupre's motion for summary judgment, (Docket No. 37), be GRANTED;

2. Defendant Dr. James Kaul's and Defendant Commissioner Joan Fabian's motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), (Docket No. 30), be GRANTED;

3. The action be dismissed, without prejudice, as to Defendant Correctional Medical Services (CMS), for lack of service of process, unless Plaintiff files a timely objection to this Report and Recommendation, which shows good cause to extend the deadline for effecting

---

[8] As a practical matter, Plaintiff could not accomplish anything by seeking to serve CMS, because he has no viable claim against CMS. Plaintiff is attempting to hold CMS liable for the alleged wrongdoing of Dr. Dupre. (Amended Complaint, "Relief," p. 10.) However, the Court has already determined that Plaintiff has no sustainable claim against Dr. Dupre, and it follows, necessarily, that Plaintiff could not sustain any claim against CMS based on the facts and circumstances presented in this case.

service of process on Defendant Correctional Medical Services (CMS), in accordance with Fed. R. Civ. P. 4(m);

      4. Plaintiff's pending "motion to amend," (Docket No. 49), should be construed as a motion to supplement the evidentiary record in this case by including the exhibits submitted with the motion, (Docket No. 50), and as so construed, the motion should be GRANTED; and

      5. This case be dismissed.

Dated: September 24, 2009

                                                                               s/ Arthur J. Boylan
                                                                           ARTHUR J. BOYLAN
                                                                           United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before October 8, 2009.